*The final accounting in* JOSHUA TOTTEN's *Estate.*

UPON an application to open a decree on accounting, error or fraud must be clearly shown, the lapse of time must be explained, and the application must be generally meritorious.

THE SURROGATE. Letters of administration were granted to Mary Totten, October 28, 1852, who petitioned

to pass her final accounts, April 14, 1854, and the citation to attend accounting was then duly served on all the parties in interest, as appears by affidavit thereon indorsed. The records of the office show no further proceedings to have been taken until January 11, 1859, when a new citation was issued, and this also was served on all the parties, as appears by affidavit, which citation was returnable January 29, 1859. On that day the final account of the administratrix was filed, charging herself with $13,318.65 of assets, from which it was claimed should be deducted $421.38 for expenses of administration, $2,470.19 for debts paid, and the sums of $1,042.20 paid to George Totten, and of $979.40 to John Totten, next of kin. A number of vouchers were filed with this account, and among the papers on file in this office, is a book containing what purports to be receipts for sums paid them, by Sarah J. Totten, Mary Ann Seaman, and others of the distributees. These signatures are all in the same handwriting, and the receipts were evidently thrown out and rejected as vouchers by the Surrogate, upon the objection of the special guardian for minor next of kin, Gabriel Van Cott, Esq., now deceased, in whose handwriting the decree is. The decree was entered by Surrogate West, the same day, and disallows not only these payments claimed to have been made to distributees, but also the greater portion of the payments claimed to have been made for debts, allowing for the latter only $675. This sum, added to the $421.38, expenses allowed, makes $1,096.38; and leaves $12,122.27 for distribution, &c. Commissions are then allowed at $232.18; and the balance is distributed as follows: To the widow, $3,963.36; to Richard, Sarah J., Adeline, Joshua, Henrietta, and Charles H. Totten, and Mary Ann Seaman, each $880.75. John Totten having been overpaid, is ordered to repay to the administratrix $98.65; and George Totten, having been overpaid, is ordered to repay $161.45.

This decree remained untouched on the records of the

Surrogate's office until December 18, 1868, when a certificate was applied for by Mary Ann Seaman, which was granted in her favor by the Surrogate, and docketed with the county clerk, and upon which an execution was issued to the sheriff of this city and county, commanding him to levy $880.75, with interest from 29th January, 1859, out of the goods, &c., of Mary Totten.

The administratrix, Mary Totten, now comes into this Court petitioning for an opening of the decree and a re-statement of her accounts. The petition refers to the receipts contained in the book to which I have alluded, and claims that they should be allowed as against Mary Ann Seaman; and that for that cause the decree should be opened as made by error or mistake.

It is true, as urged by the petitioner, that there is no other relief possible for her, than the granting of this application. The time for appeal has long since expired, and the settlement of the estate is a finality, except that the Surrogate shall be found to have committed some plain error, which calls for correction. But the petitioner does not stand before this Court with merit in her application. She asks to have an accounting opened, which was made ten years ago, upon her own motion, and without any contest or even appearance on behalf of any of the adults interested in the estate. She has acquiesced for ten years in the disallowance of the vouchers in question, and in the decree which ensued on their rejection. She does not, on the other hand, claim in her petition that she has obeyed any portion of the decree; and she is scarcely in a position to ask equity who does not do equity.

As to the decree itself, which is sought to be impeached, it does not seem to have been made without due consideration. The vouchers filed at the time must be presumed to have been examined by the Surrogate then on this bench. There is good reason for believing that those purporting to be signed by Mrs. Seaman and her sister

were rejected because the handwriting and signatures appeared not to be genuine. That the accounts were carefully scrutinized is certain from the fact that the payments for debts claimed were reduced from $2,470.19 to $675.

I do not doubt the power of the Surrogate to re-open a settlement when he is clear that error or fraud has been committed, and especially where (as appears here to have been the case) no payments have been made under it, and all the parties are still in being, although ten or more years may have elapsed since the decree. But the error or fraud must be clearly shown; the lapse of time must be explained; and the application must be generally meritorious. The petition in this case must be denied.

On the denial of this motion, another was made by John Totten, one of the distributees, for a re-opening of the final accounting of January 29, 1859, on an affidavit claiming that he was not a party to it, not having been served with citation, and that he has never heard of the decree until recently; that a receipt bearing his name, and put in as a voucher, is a forgery, etc.

THE SURROGATE. There are two affidavits showing service of these citations on John Totten, and I cannot see that he excuses his laches by making a simple denial of service, after ten years. The affidavit that he was served was made at the time, and the presumption is that he has forgotten the circumstance since. It is possible that the signature to this voucher is a forgery; and in denying the present application, I will reserve him an opportunity of renewing it, after he shall have taken steps to punish in a Criminal Court the perpetrator of the alleged crime.